UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,    :
    :
    v.    :    **MEMORANDUM & ORDER**
    :  19-CR-389 (WFK)
CHAUNCEY LEE,    :
    :
          Defendant.    :
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:** On November 2, 2020, Chauncey
Lee ("Defendant") pled guilty to Count One of a two-count Indictment, charging him with being
a felon in possession of three (3) firearms, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).
The Court now sentences him and provides a complete statement of reasons pursuant to 18
U.S.C. § 3553(c)(2) of those factors set forth by Congress and contained in 18 U.S.C. § 3553(a).
For the reasons discussed below, Defendant is hereby sentenced to forty (40) months of
incarceration, two (2) years of supervised release with special conditions, including consent to a
search by a probation officer and drug testing at the probation officer's request, and a $100.00
special assessment.

## BACKGROUND

On August 12, 2019, the Government filed a Complaint charging Defendant with being a

felon in possession of three (3) firearms and five (5) rounds of ammunition, in violation of 18

U.S.C. § 922(g)(1). On August 26, 2019, the United States filed a two-count Indictment against

Defendant charging him with being a felon in possession of firearms (Count One) and

ammunition (Count Two) in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On November 2,

2020, Defendant pled guilty to Count One of the Indictment.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence

using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I.  Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The

"starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines

sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, No. 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## II. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

i.   <u>History and Characteristics of the Defendant</u>

Defendant was born on September 14, 1992, in Brooklyn New York to Kurt Barnaby and Roanne Sharmine Lee. Presentence Investigation Report ("PSR") ¶ 34, ECF No. 30. Defendant's father passed away when Defendant was two years old. *Id.* Defendant's mother lived with Defendant and worked as a New York City correction officer. *Id.* In 2011, Defendant's mother was diagnosed with breast cancer, and passed away at age 45 in December of 2017 while Defendant was incarcerated for a separate crime. *Id.* ¶¶ 34, 37.

Defendant maintains daily contact with his maternal grandmother, Annmarie Lee (age 67), with whom he has a loving relationship. *See id.* ¶¶ 34-35. Ms. Lee is aware of Defendant's instant offense and remains supportive of him. *Id.* She describes Defendant as a productive member of society and a loving, considerate, and family-oriented person. *Id.*

Defendant has one sibling, his maternal half-brother, Carlton Lee-Roy Gullab, Jr., who is a security worker. *Id.* ¶ 36. The two talk weekly by computer, and Mr. Gullab, Jr. remains aware of Defendant's instant offense and remains supportive of him. *Id.*

Defendant is a life-long New York native. *Id.* ¶ 37. He first lived with his mother and grandmother at the grandmother's residence in Canarsie before moving with his mother to Brooklyn, New York in his early childhood. *Id.* Defendant later moved to the Crown Heights neighborhood of Brooklyn, New York with his mother and half-brother, where the family remained until Defendant was approximately seventeen (17) or eighteen (18) years old. *Id.* Thereafter, the family moved to West Hempstead, New York. *Id.* At some point during Defendant's incarceration, his mother purchased a residence in Brooklyn and returned to New York City from Long Island. *Id.* ¶ 37. This residence was ultimately left to Defendant's half-brother upon the passing of Defendant's mother. *Id.* ¶ 39. However, Defendant continues to support his half-brother with many of the bills. *Id.*

Because he was reared in a single-parent home, Defendant reported experiencing a childhood in which he took on many child-care responsibilities at an early age to support his younger half-brother. *Id.* ¶ 38. These responsibilities included changing his diapers, taking him to school, completing chores, cooking for each other, and other "big brother" duties. *Id.* Defendant nonetheless describes his childhood as "fun" but stated his family's movement to different neighborhoods made him constantly feel alone. *Id.* He states this feeling was

3

exacerbated because his mother was constantly working to support the family, which left Defendant with the responsibility of taking care of his half-brother.  *Id.*  Defendant reports his basic living necessities were met and that he did not endure any abuse or neglect.  *Id.*

Because the Defendant often confided in his mother, her death left him without any emotional outlet.  *Id.* ¶ 39.  He states he does not know how to handle the responsibilities she once managed and fears making wrong decisions about them.  *Id.*  The Defendant's grandmother corroborated that his mother's death drastically affected the Defendant.  *Id.*

### ii.   Physical, Mental, and Emotional Health

The Defendant enjoys sound physical health and has no history of chronic illnesses or medical conditions.  *Id.* ¶ 44.  The Defendant also has no history of mental, emotional, or gambling conditions, and is currently not taking any medications for any mental or emotional health reasons.  *Id.* ¶ 45.  However, because of his mother's passing, Defendant states his emotions are like a "rollercoaster."  *Id.*  He states this is especially because his mother died while he was in New York State custody, and she had always been there for him.  *Id.*  Defendant states he tries to manage his emotions through writing.  *Id.*

### iii.   Substance Abuse

Aside from a glass of wine that he drank in 2018 to commemorate his mother's birthday with his half-brother and grandmother, Defendant has no history of alcohol or drug use.  *Id.* ¶ 46.

### iv.   Educational, Vocational and Special Skills

From freshman through junior year of high school, Defendant attended the Frederick Douglass Academy VII High School in the Brownville neighborhood of Brooklyn, New York. *Id.* ¶ 49.  Defendant reported having good grades but states he received detention on occasion for

4

tardiness. *Id.* At some point, Defendant experienced an altercation with another student, after which he was advised by the principal that he could not return to school. *Id.*

After moving from Brooklyn, Defendant completed his senior year of high school in 2010 at Malverne High School in Nassau County, New York. *Id.* ¶ 48. But because of another out-of-school incident between Defendant and another classmate, Defendant was barred from attending day-time classes, and he was required to complete school at night to graduate. *Id.*

After graduating from high school, Defendant attended Queensborough Community College in Bayside, New York to pursue a degree in electrical engineering, but an arrest in August 2011 interrupted his education. He chose not to return to college for the Fall 2011 semester. *Id.* ¶ 47.

During the pendency of his trial for the August 2011 offense, Defendant attended The School of Cooperative Technical Education in New York, New York and earned a certificate in Electrical Installation. *Id.* ¶ 50. During this time, Defendant received a grade of 85 for the first semester, and a grade of 90 in the second semester. *Id.* Defendant also obtained an Occupational Safety and Health Administration (OSHA) 10 certification. *Id.*

v.   Employment Record

During his youth, Defendant made money performing various tasks, such as shoveling snow from people's homes. *Id.* ¶ 54. While incarcerated for a separate offense, Defendant worked as a maintenance utility worker, gym orderly, laundry operator, and porter to varying jail facilities. *Id.* ¶ 24. He was also identified to have potential future employment in the construction and maintenance industries, specifically, in working with drywall and serving as a repair helper. *Id.*

After serving his sentence for that offense, from October 2018 to December 2018, Defendant worked as a seasonal term package handler for the United Parcel Service Customer Center in Brooklyn, New York. *Id.* ¶ 53. From January 2019 to July 2019, Defendant worked for the All County Sewer and Drain Inc. in Bronx, New York. *Id.* ¶ 52. Though initially employed to be a helper to a plumber, Defendant learned the necessary skills to become a plumber and was subsequently promoted to one. *Id.* Defendant reports he maintains contact with one of the company's supervisors. *Id.*

### vi.   Criminal History

On August 28, 2010, Defendant was arrested and charged with Criminal Possession of a Weapon in the Second Degree: Loaded Firearm, a Class C Felony. *Id.* ¶ 30. The disposition of this offense is unknown. *Id.*

According to a New York Police Department ("NYPD") arrest report, on July 17, 2011, Defendant, at the direction of an unapprehended co-conspirator, drew a knife and chased an individual before twice stabbing him in the back. *Id.* ¶ 24. The victim's wounds required surgery at a local hospital and caused him significant pain. *Id.* As part of this offense, Defendant was flagged by the NYPD as an associate of the Brower Boys gang, which is affiliated with a set of the Bloods, specifically, the Gangster Killer Bloods. *Id.*

On October 10, 2012, Defendant was convicted by a jury in Kings County Supreme Court of (1) Attempted Assault in the First Degree: Intent to Cause Serious Injury; and (2) Assault in the Second Degree: Intent to Cause Physical Injury with Deadly Weapon/Dangerous Instrument, both of which were felonies in violation of New York State Penal Code. *Id.* Defendant was sentenced to seven years' custody. *Id.* He was released on parole on October 4, 2018. *Id.*

Defendant was also charged in state court for the instant offense. Specifically, on July 5, 2019, Defendant was charged with (1) three counts of Criminal Possession of a Weapon in the Second Degree: Loaded Firearm, a Class C Felony; (2) one count of Criminal Use of a Firearm in the Second Degree: Display Weapon, a Class C Felony; and (3) three counts of Criminal Possession of a Firearm, a Class E Felony. *Id.* ¶ 32. These charges were later dropped because of the instant federal prosecution. *Id.*

vii.   Adjustment to Incarceration

Defendant received four disciplinary infractions while serving his sentence for the July 17, 2011 incident: (1) Possession of Contraband on April 19, 2016; (2) Engaging in Violent Conduct – Fighting on June 7, 2016; and (3) two Phone Violations on July 5, 2017 and December 3, 2017. *Id.*

viii.   Adjustment to Supervision

Defendant stated he faithfully complied with the terms of his parole for the July 17, 2011 offense, which included working, communicating well with his supervising officer, and checking in regularly. *Id.* Defendant's supervising officer reportedly requested that he terminate Defendant's parole supervision early. *Id.*

ix.   Nature and Circumstances of the Offense

On July 5, 2019, at approximately 2:06 A.M., an off-duty NYPD officer observed Defendant standing in the street and firing a gun repeatedly into the air in the Canarsie area of Brooklyn. *Id.* ¶ 5. A short time later, NYPD officers arrived at the location in response to a shot-spotter alert and discovered a bookbag in the front yard of a house belonging to the Defendant's grandmother. *Id.* ¶ 6. Inside the bag, officers found alcohol, gloves, and five rounds of ammunition and three firearms—specifically, (1) a .40-caliber Smith and Wesson

7

semi-automatic pistol bearing serial number PBC3827; (2) a loaded .380-caliber Ruger semi-automatic pistol bearing serial number 380034914; and (3) a .357-caliber Ruger revolver bearing serial number 3000125. *Id.* The Smith and Wesson pistol had recently been fired. *See id.*

**B.  The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense and his reckless action of opening fire on a public street on the evening following a national holiday, and punishes Defendant accordingly. It seeks to deter Defendant from further criminal activity, promote respect for the law, and to deter others from similar illicit conduct.

**C.  The Kinds of Sentences Available**

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to one count of being a felon in possession of three firearms in violation of 18 U.S.C. § 922(g)(1). The maximum term of imprisonment is ten years. 18 U.S.C. §§ 922(g)(1), 924(a)(2). By statute, Defendant also faces a maximum supervised release term of not more than three years and a term of probation of not less than one nor more than five years. 18 U.S.C. §§ 3583(b)(2); 3561(c)(1). One of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service. 18

8

U.S.C. § 3563(a)(2).  In addition, the maximum fine is $250,000.00, *see* 18 U.S.C. § 3571(b), and a special assessment of $100.00 is mandatory, 18 U.S.C. § 3013.  Finally, as part of his Plea Agreement, the Defendant consented to the forfeiture of the three firearms and ammunition involved in the instant offense.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]"  USSG § 3553(a)(4)(A).

Under USSG § 2K2.1, the base offense level for Defendant's offense is twenty (20) because Defendant sustained at least one felony conviction of either a crime of violence or a controlled substance offense prior to engaging in the instant offense.  *See id.* §§ 4B1.2(a), 2K2.1(a)(4)(A).  Specifically, Defendant has a conviction for Assault in the Second Degree: Intent to Cause Physical Injury with a Deadly Weapon or Dangerous Instrument, and Attempted Assault in the First Degree: Intent to Cause Serious Injury with a Deadly Weapon, both of which are crimes of violence as defined in USSG § 4B1.2(a).  Because the offense involved three firearms, two (2) levels are added per USSG § 2K2.1(b)(1)(A).  Because Defendant demonstrated acceptance of responsibility for the instant offense, the offense level is decreased by two (2) points.  *Id.* § 3E1.1(a).  Finally, because the Government was notified in a timely manner of Defendant's intention to plead guilty, the offense level is decreased by one (1).  *Id.* § 3E1.1(b).  This results in a total offense level of nineteen (19).

Both Probation and the Government agree Defendant has a criminal history category of three (III). Defense counsel has not submitted a calculation of Defendant's offense level or criminal history category.

For a total offense level of nineteen (19) and a criminal history category of three (III), the Guidelines imprisonment range is thirty-seven (37) months to forty-six (46) months of incarceration. The Guidelines further suggest a term of supervised release of one (1) to three (3) years, *see* USSG § 5D1.2(a)(2), and a fine of between $10,000.00 to $100,000.00. USSG § 5E1.2(c)(3).

Defense counsel urges the Court to impose the "[m]inimum period of incarceration that is required by law." Def. Mem. at 5, ECF No. 29. In support, defense counsel cites to (1) Defendant's experience growing up in a single parent household, (2) the trauma he suffered due to the loss of his mother on December 26, 2017, (3) the impact his incarceration may have had on his emotional and social development as a young adult, (4) the violent environment in which he grew up, (5) his acceptance of responsibility for the current offense, and (6) his "strong desire" to return to the workforce. *Id.* 5-6.

The Government requests a within-Guidelines sentence of thirty-seven (37) months to forty-six (46) months of incarceration. The Government argues this sentence is warranted due to the "serious" nature of the offense, Defendant's reckless action in opening fire on a public street on an evening following a national holiday, Defendant's history of using weapons in public, and the need to deter others from proliferating illegal guns and causing gun violence in New York. Gov't Mem. at 3-4, ECF No. 33. The Government acknowledges the Defendant's "difficult childhood" but states it does not justify a variance below the Guidelines. *Id.* at 4.

Probation recommends a sentence of forty (40) months of imprisonment, two (2) years of supervised release with special conditions, including consent to a search by a probation officer and drug testing at the probation officer's request, compliance with the order of forfeiture, and a $100.00 special assessment. Probation Sentencing Recommendation at 1, ECF No. 30-1. Probation urges the Court to consider as aggravating factors the dangerousness of Defendant's conduct, the seriousness of his possession of three firearms, and his history of weapons-related offenses. *Id.* at 3. However, Probation acknowledges Defendant's personal history, including his experience growing up in a fatherless household, pursuit of education, and ability to obtain employment, are mitigating factors. *Id.*

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5). The Court has considered one such policy statement: USSG § 5K2.21, which states the Court may "depart upward to reflect the actual seriousness of the offense based on conduct (1) underlying a charge dismissed as part of a plea agreement in the case, or underlying a potential charge not pursued in the case as part of a plea agreement or for any other reason; and (2) that did not enter into the determination of the applicable guideline range." As part of the instant offense, Defendant discharged five rounds of ammunition into the air in the midst of a group of individuals. This conduct amounts to a violation of New York State Penal Law, specifically, Reckless Endangerment in the Second Degree, a Class A Misdemeanor. While this additional conduct was not factored into the Sentencing Guidelines calculation for the instant offense, the Court's consideration of the kinds of sentences available and the sentencing range established for Defendant's charged offenses under the Guidelines adequately reflect the seriousness of Defendant's conduct.

**F. The Need to Avoid Unwarranted Sentence Disparities**

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

**G. The Need to Provide Restitution**

Finally, the seventh § 3553(a) factor requires the Court to address "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7). Restitution is not applicable to this case. *See* 18 U.S.C. § 3663.

## CONCLUSION

A sentence of forty (40) months of incarceration, two (2) years of supervised release with special conditions (including consent to a search by a probation officer and drug testing at the probation officer's request), and a $100.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and any addenda thereto, barring any errors contained therein, to the extent they are not inconsistent with this opinion.

**SO ORDERED.**

**s/ WFK**

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: April 19, 2022
      Brooklyn, New York

13